UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

Civil Action No.: 4:24-cv-04267-JD

| | |
|---|---|
| Lamill Holding Company, and AGA Capital, LLC, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | )<br>)<br>) |
| Bitmain Technology Georgia Limited, | )<br>) |
| Defendants. | ) |

# MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO DISMISS

Plaintiffs and Counter-Defendants, Lamill Holding Company and AGA Capital, LLC, by and through undersigned counsel and pursuant to Rule 12(b)(6) of the *Federal Rule of Civil Procedure*, hereby respectfully submit this Memorandum of Law in Support of their Motion to Dismiss Defendant and Counter-Plaintiff Bitmain Technology Georgia Limited's Counterclaims with prejudice.

## INTRODUCTION

The Counter-Plaintiff ("Bitmain") brings four counterclaims against the Counter-Defendants ("Lamill and AGA") alleging a company they own, Bennettech, LLC, (1) breached a contract with them, (2) is required to indemnify them, (3) failed to adequately protect their property, and (4) Lamill and AGA should be held equally responsible. The counterclaims are entirely predicated upon a finding that Lamill and AGA should be equitably held responsible

**FACTS ALLEGED**

On August 5, 2023, Bitmain and Bennettech entered into a Service Framework Agreement ("SFA"). The SFA provided that Bennettech would (1) provide Bitmain with sufficient electric power load and facilities required for the normal operation of the certain hosted servers; (2) maintain an Online Status Ratio of at least 95% for the Hosted Servers, ensuring they were online and operational; (3) take standard industry practices and all necessary measures to ensure the safety and security of the Data Center Facility and the Hosted Servers against any safety accidents; (4) make certain payments to Bitmain as hosting fees and deposits; (5) allow Bitmain unfettered access to the Data Center Facility; and (6) indemnify Bitmain for costs incurred in relation to any third-party actions and breaches under the SFA. Bennettech failed to perform the agreed upon terms of the SFA and Bitmain suffered monetary damages exceeding $5.6 million due to these breaches. Similarly, Bitmain entrusted 9,000 Hosted Servers to Bennettech's care for bitcoin mining and Bennettech failed to exercise due care, resulting in the loss of 280 Hosted Servers and further damages to Bitmain.

Lamill and AGA are the sole owners of Bennettech, which they created in an attempt to gain profit and avoid all liabilities. Lamill and AGA have complete control over Bennettech and Bennettech has no separate interest of its own; it exists solely to achieve the goals of Lamill and AGA and was established to perpetuate fraud and injustice upon parties such as Bitmain. Specifically, Lamill and AGA knew that Bennettech and another related company could not meet its contractual obligations, yet formed the entities in a manner that Lamill and AGA believed would relieve them of any resulting liabilities. Bitmain does not allege how the actions of Lamill and AGA, apart from the alleged actions of their alter ego, harmed or defrauded Bitmain (or anyone for that matter). Bitmain does

REL25798

not allege what specifically about Lamill and AGA's intent to make profit is particularly fraudulent. Bitmain does not allege what about an attempt to avoid liability is particularly fraudulent. The Court and Counter-Defendants are left to assume that Bitmain will eventually invent (a) facts supporting the vicarious liability they now seek and (b) damages they will no doubt request the legal fees associated therewith.

## STANDARD FOR DISMISSAL

"To survive a Rule 12(b)(6) motion to dismiss, a complaint must 'state a claim to relief that is plausible on its face.'" *United States ex rel. Nathan v. Takeda Pharms. N. Am., Inc.*, 707 F.3d 451, 455 (4th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Facts that are 'merely consistent with' liability do not establish a plausible claim to relief." *Id.* (quoting *Iqbal*, 556 U.S. at 678). "In addition, although [courts] must view the facts alleged in the light most favorable to the plaintiff, [courts] will not accept 'legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments.'" *Id.* (quoting *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012)).

"When 'alleging fraud or mistake,' however, a plaintiff must not only meet 'the plausibility standard of' Rule 8, but also satisfy the heightened pleading standard of Rule 9(b)." *United States ex rel. Taylor v. Boyko*, 39 F.4th 177, 189 (4th Cir. 2022) (quoting *Nathan*, 707 F.3d at 455). "Rule 9(b) requires a plaintiff alleging fraud or mistake ... to 'state with particularity the circumstances constituting fraud or mistake.'" *Id.* (quoting Fed. R. Civ. P. 9(b)). "To satisfy Rule 9(b), a plaintiff asserting a claim . . . 'must, at a minimum, describe the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'"

*Nathan*, 707 F.3d at 455-56 (quoting United States ex rel. *Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008)). "These circumstances are often 'referred to as the "who, what, when, where, and how" of the alleged fraud.'" *Taylor*, 39 F.4th at 189 (quoting *Wilson*, 525 F.3d at 379).

## ARGUMENT

Merely naming all owners of a company and alleging that "a company was used to perpetrate fraud" is insufficient to state a claim for alter ego liability and pierce the corporate veil under federal law. The *Federal Rules of Civil Procedure*, particularly Rule 9(b) and the Twombly/Iqbal plausibility standard, require plaintiffs to plead specific facts with particularity. The plaintiff must demonstrate not only control, and that fraud occurred but also that the corporate structure was abused to perpetrate that fraud. Without facts showing that the corporation was misused as an alter ego or that corporate formalities were disregarded, a vague claim of fraud does not satisfy the legal requirements to pierce the corporate veil.

The alter-ego doctrine is a theory of piercing the corporate veil under South Carolina common law. *Drury Dev. Corp. v. Found. Ins. Co.*, 380 S.C. 97, 668 S.E.2d 798, 800 n.1 (S.C. 2008). In South Carolina, "the doctrine of piercing the corporate veil is not to be applied without substantial reflection." *Id.* quoting *Sturkie v. Sifly*, 313 S.E.2d 316, 318 (S.C. Ct. App. 1984). "[A] corporation is an entity, separate and distinct from its officers and stockholders, and . . . its debts are not the individual indebtedness of its stockholders." *Hunting v. Elders*, 597 S.E.2d 803, 806 (S.C. Ct. App. 2004) (internal quotation marks and citation omitted). "If any general rule can be laid down, it is that a corporation will be looked upon as a legal entity until sufficient reason to the contrary appears; but when the notion of legal entity is used to protect fraud, justify wrong, or

defeat public policy, the law will regard the corporation as an association of persons." Id. (quoting *Sturkie*, 313 S.E.2d at 318). "The party seeking to pierce the corporate veil has the burden of proving that the doctrine should be applied." *Id*. To determine veil piercing propriety, South Carolina uses a two-prong test. "The first prong analyzes the shareholder's relationship to the corporation by evaluating eight factors. The second prong requires the plaintiff to demonstrate that 'fundamental unfairness' would result from recognition of the corporate entity." *Id*.; see also *Multimedia Pub. of S.C. v. Mullins*, 431 S.E.2d 569, 571 (S.C. 1993) (elaborating on the two prongs). Not all the first prong's eight factors need be satisfied. *Hunting*, 597 S.E.2d at 807. Because "[t]he corporate form may be disregarded only where equity requires the action to assist a third party[,]" "[t]he heart of the dispute . . . is whether the preponderance of the evidence shows that if the separate identity of [the entity] is regarded, the [third party] will suffer injustice or fundamental unfairness." *Sturkie*, 313 S.E.2d at 318-19 (refusing to pierce veil where a third party sought to enforce a judgment against the corporation against the corporate officers and directors).

**I.     The Counterclaims Fail to Adequately Allege the Element of Control**

The first prong in an alter ego claim, commonly referred to as the "control element," "may be shown where the subservient entity manifests no separate interest of its own and functions solely to achieve the goals of the dominant entity." *Colleton Cnty. Taxpayers Ass'n v. Sch. Dist. of Colleton Cnty.*, 371 S.C. 224, 638 S.E.2d 685, 692 (S.C. 2006). However, simply naming all the shareholders or owners of a company does not inherently satisfy the control requirement. Here, the Counterclaims assert nothing more than "[t]he Counter-Defendants have total domination and control over Bennettech." Such a statement fails to meet the pleading requirements.

REL25798

### a. Owners Do Not Automatically "Control" the Company

The mere fact that someone is an owner does not mean they exercise actual control over the company. While shareholders and owners have a financial interest in the company and voting rights, corporate governance and daily operations are generally managed by directors, officers, and managers. "Control," in the context of alter ego claims, must show that a specific individual or group exercised dominion over the corporation beyond typical shareholder rights. Any assertion to the opposite creates an exception that swallows the rule. Any party seeking to meet the control element of an alter ego claim need merely name all owners. A minority shareholder, of which the Counterclaims fails to distinguish, may own a portion of the company but have no influence over how it is run. Conversely, majority shareholders might delegate authority to officers or a board without exercising personal control over the corporation's actions.

### b. "Control" Requires Operational and Managerial Dominance

The control element for alter ego or veil-piercing claims typically requires proving that an individual or entity controlled the corporation to such an extent that the company no longer functioned independently. The individual or entity must have directed or manipulated the corporation's actions to advance personal interests, often in a manner inconsistent with corporate formalities. Naming all shareholders, as the Counterclaims do, fails to establish who, if anyone, was in a position of such influence. Control involves more than ownership; it refers to the ability to dictate how the company operates. For veil-piercing, courts are concerned with whether someone used the corporate structure as a mere facade or instrumentality for personal gain.

REL25798

### c. Corporate Formalities and Separation of Entities

Piercing the corporate veil requires a showing that the corporate entity was not treated as separate from its shareholders, but naming shareholders does not address this. The relevant question is whether the shareholders (or others) disregarded corporate formalities—such as failing to keep separate financial accounts, ignoring corporate bylaws, or failing to hold regular board meetings. Thus, South Carolina law considering eight factors for purposes of establishing the necessary "control." *Dumas*, 320 S.C. 188, 463 S.E.2d 641. These factors are:

> (1) whether the corporation was grossly undercapitalized;
> (2) failure to observe corporate formalities;
> (3) non-payment of dividends;
> (4) insolvency of the debtor corporation at the time;
> (5) siphoning of funds of the corporation by the dominant stockholder;
> (6) non-functioning of other officers or other directors;
> (7) absence of corporate records; and
> (8) the fact that the corporation was merely a facade for the operations of the dominant stockholder.

*Dumas*, 320 S.C. at 192, 463 S.E.2d at 644. "The conclusion to disregard the corporate entity must involve a number of the eight factors but, need not involve them all." Id. (citing *Cumberland Wood Prods. v. Bennett*, 308 S.C. 268, 417 S.E.2d 617 (Ct. App. 1992)). The Counterclaims' naming of all shareholders but presenting no claims concerning how they treated the corporation as a personal asset or ignored corporate governance processes, is irrelevant to showing actual control. Importantly, an allegation that the owners had a profit motive or wished to avoid liability is not listed as any part of these factors.

Courts require specific evidence to prove that control was exercised in a manner that justifies veil piercing. This often includes showing that the individual or entity exercised total control over financial decisions, contracts, and business policies to the

point where the corporation was not functioning independently. Merely naming shareholders, without providing concrete allegations of who controlled key corporate decisions, fails to meet the legal threshold. Control is typically demonstrated through patterns of behavior, financial intermingling, lack of corporate governance, or fraudulent use of the corporate entity.

### d. Focus on Specific Individuals Exercising Control

Courts typically look for specific individuals or entities that exercised undue influence or control over the company, particularly when the corporation is used to commit fraud or injustice. This can involve a controlling shareholder, a single officer, or a parent company. Simply listing all shareholders, when one may be passive or uninvolved, fails to pinpoint who was responsible for the improper behavior necessary to pierce the veil.

### e. Ownership and Control Are Not Synonymous

Equating ownership with control overlooks the fact that many corporations have shareholders who are not involved in day-to-day operations. Control for purposes of alter ego liability is not synonymous with ownership; rather, it requires showing that individuals exerted such pervasive influence over the company that it lost its separate identity. The Counter-Plaintiff cannot overcome these requirements simply by listing all of the owners.

### II. The Counterclaims Fails to Adequately Present the Element of Fraud

The fraud element, commonly referred to as the "inequitable consequences element," requires some "fraud or misuse of control by the dominant entity which results in some injustice." *Colleton Cnty. Taxpayers Ass'n*, 371 S.C. 224, 638 S.E.2d 685, 692; accord

*Oskin v. Johnson*, 400 S.C. 390, 735 S.E.2d 459, 465 (S.C. 2012) (explaining that the alter-ego theory does not apply "in the absence of fraud, injustice, or contravention of public policy"). For a claim of fraud and veil piercing to survive a motion to dismiss, the plaintiff must provide a factual basis showing why the corporation was not an independent entity and how it was misused to commit the alleged fraud. Although Rule 8 only requires "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 127 S. Ct. at 1964-65 (internal quotation marks omitted). Simply alleging that "a company was used to perpetrate fraud" is insufficient to state a claim for purposes of establishing alter ego liability and piercing the corporate veil under the *Federal Rules of Civil Procedure*, specifically Rule 8 and Rule 9(b) and simply assert bald legal conclusions. Further, stating

In *SD3, LLC v. Black and Decker (U.S.) Inc.*, the Fourth Circuit Court of Appeals determined that the plaintiff "nakedly alleges that all of the corporate subsidiaries are 'dominated by, and [are] alter ego[s] of,' these corporate parents," but that such an allegation "offers only a legal conclusion, and [the plaintiff] has alleged no facts suggesting the kind of unity of interests that we usually require a party to plead before permitting them to advance an alter ego theory." 801 F.3d 412 (4th Cir. 2015) (citing *C.F. Trust, Inc. v. First Flight Ltd. P'ship*, 306 F.3d 126, 134 (4th Cir. 2002)).

Rule 9(b) of the *Federal Rule of Civil Procedure* requires that a party alleging fraud must state "with particularity the circumstances constituting fraud." General claims that a company was "used to perpetrate fraud" fail to meet this heightened pleading standard. Simply alleging that fraud occurred does not give the defendant adequate notice of the

REL25798

claims or provide sufficient detail for the court to assess whether the claim is plausible. A plaintiff must allege the "who, what, when, where, and how" of the fraudulent activity. This includes identifying the specific fraudulent acts, the individuals involved, the timing, and how the fraud was carried out through the company. Without these specifics, a mere assertion of fraud is conclusory and insufficient under federal law.

## **CONCLUSION**

Merely naming all owners of a company and alleging that a company "was used to perpetrate fraud" is insufficient to state a claim for alter ego liability and pierce the corporate veil under federal law. The *Federal Rules of Civil Procedure*, particularly Rule 9(b) and the Twombly/Iqbal plausibility standard, require plaintiffs to plead specific facts with particularity. The plaintiff must demonstrate not only control and that fraud occurred, but also that the corporate structure was abused to perpetrate that fraud. Without facts showing that the corporation was misused as an alter ego or that corporate formalities were disregarded, a vague claim of fraud does not satisfy the legal requirements to pierce the corporate veil. Respectfully, the Counter-Plaintiff's counterclaims should be dismissed with prejudice.

[SIGNATURE ON THE FOLLOWING PAGE]

**ROBERT E. LEE, LLC**

S/Robert E. Lee

_____

Robert E. Lee – FID #5509
Post Office Box 1096
Marion, South Carolina 29571
Telephone:   843-423-1313
E-Mail:      rel@rellawfirm.com

And,

**WRIGHT, WORLEY, POPE, EKSTER & MOSS, PLLC**
Kenneth R. Moss, FID#10754
628A Sea Mountain Highway
North Myrtle Beach, South Carolina 29582
Telephone:   843-281-9901
E-Mail:      KennethMoss@wwpemlaw.com

**ATTORNEYS FOR THE PLAINTIFFS**

September 11, 2024
Marion, South Carolina