IN THE UNITED STATED DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| LAMILL HOLDING COMPANY, AND AGA CAPITAL, LLC,<br><br>Plaintiffs/Counter-Defendants,<br><br>vs.<br><br>BITMAIN TECHNOLOGY GEORGIA LIMITED<br><br>Defendant/Counter-Plaintiff. | Civil Action No. 4:24-cv-04267-JD<br><br>**Defendant/Counter-Plaintiff's Opposition to Plaintiff's Motion to Dismiss** |

Defendant and Counter-Plaintiff Bitmain Technologies Georgia Limited ("Bitmain") hereby respectfully submits its Opposition to Plaintiffs and Counter-Defendants Lamill Holding Company ("Lamill") AGA Capital, LLC ("AGA Capital") (collectively, "Plaintiffs") Motion to Dismiss.

### INTRODUCTION

Bitmain alleges that Plaintiffs created Bennettech, LLC ("Bennettech") as part of a complicated, but not overly sophisticated shell game in an attempt to gain profit in the millions without consequence and at Bitmain's expense. Bitmain alleges Plaintiffs stood up Bennettech, as an alter ego solely for the purpose of protecting Plaintiffs from their own wrongdoing. Bitmain alleges claims of breach of contract, indemnity, and negligence against Plaintiffs through the actions of their alter ego, Bennettech. In their Motion to Dismiss, Plaintiffs claim that Bitmain's Counterclaims should be denied because Bitmain's alter ego claim does not satisfy Rule 9(b)'s heightened standard. Plaintiffs' Motion fails because Rule 9(b)'s heighted standard does not apply

to alter ego claims.  Rule 9(b)'s heightened standard applies to fraud claims, and Bitmain has not alleged any such claim.  Instead, Rule 8's plausibility standard applies to Bitmain's claims, and Bitmain more than satisfies this standard.

## LEGAL STANDARD

To survive a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff's allegations must "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A Rule 12(b)(6) motion should not be granted unless it appears certain that the plaintiff can prove no set of facts that would support his claim and would entitle him to relief.  *See e.g.*, *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).  When considering a Rule 12(b)(6) motion, the court should accept all well-pleaded allegations as true and should view the complaint in a light most favorable to the plaintiff.  *See e.g., Ostrzenski v. Seigel*, 177 F.3d 245, 251 (4th Cir. 1999). "A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief and a demand for the relief sought."  Fed. R. Civ. P. 8(a).

When alleging fraud, however, a plaintiff must not only meet the plausibility standard of Rule 8, but also satisfy the heightened pleading standard of Rule 9(b).  *United States ex rel. Taylor v. Boyko*, 39 F.4th 144, 189 (4th Cir. 2022).  "Rule 9(b) requires a plaintiff alleging fraud or mistake . . . to 'state with particularity the circumstances constituting fraud or mistake.'"  *Id*. (quoting Fed. R. Civ. P. 9).

Rule 9(b)'s heightened standard does not apply to alter ego claims.  *Strawbridge v. Sugar Mountain Resort, Inc.*, 243 F.Supp.2d 472, 476 (W.D. N.C. 2003).  Instead, the Fourth Circuit analyzes a Rule 12(b)(6) motion to dismiss an alter ego claim under the normal plausibility

2

standard. *See Vitol, S.A. v. Primerose Shipping Co. LTD*, 708 F.3d 527, 543-48 (4th Cir. 2013) (analyzing 12(b)(6) motion to dismiss alter ego claim under Rule 8 standard).

## ARGUMENT

### I.     Plaintiffs' Motion to Dismiss Is Based on the Incorrect Legal Standard.

Plaintiffs' Motion is centered on the argument that Bitmain's alter ego claim is subject to Rule 9(b)'s heightened standard, requiring Bitmain to plead certain facts with particularity. *See generally* Mot. to Dismiss. This is the incorrect legal standard. Claims based in fraud are subject to Rule 9(b)'s heightened standard. Fed. R. Civ. P. 9(b). An alter ego claim, however, is subject to Rule 8(a)'s standard. *See e.g.*, *Vitol, S.A. v. Primerose Shipping Co. LTD*, 708 F.3d 527, 543-48 (analyzing Rule 12(b)(6) motion to dismiss alter ego claim under Rule 8 standard). This is because an alter ego claim "is not a claim for the tort of fraud" since "fraud, itself, is not required in order to piece the corporate veil." *Strawbridge v. Sugar Mountain Resort, Inc.*, 243 F.Supp.2d 472, 476 (W.D. N.C. 2003); *Multimedia Pub. Of South Carolina, Inc. v. Mullins*, 431 S.E.2d 569, 554 (S.C. 1993) ("fundamental injustice can exist in the absence of fraud"). Instead, "piercing the corporate veil is an equitable claim that requires a combination of factors which, when taken together with an element of injustice or abuse of corporate privilege, show that the corporation is a mere instrumentality of the individual or shareholders." *Id*. (internal quotations and citations omitted).

Moreover, Rule 9(b)'s standard applies for claims of fraud, and Bitmain has not alleged a fraud claim. Courts within the Fourth Circuit, including cases cited in Plaintiffs' Motion, analyze Rule 12(b)(6) motions to dismiss alter ego claims under Rule 8's standard. *See* Mot. to Dismiss, p. 6 (citing *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412 (4th Cir. 2016) which reviews

3

motion to dismiss alter ego claim under Rule 8). Thus, Bitmain's Counterclaim's are subject to the requirements of Rule 8(a), not Rule 9(b).

## II.     Bitmain Has Alleged Facts Sufficient to Satisfy Rule 8(a).

Bitmain's Counterclaims include claims for veil piercing/alter ego, breach of contract, indemnity, and negligence. In their Motion, Plaintiffs' request that the Court dismiss Bitmain's Counterclaims in its entirety but does not address or challenge Bitmain's breach of contract, indemnity, and negligence claims. Nonetheless, Bitmain has alleged facts sufficient to Satisfy Rule 8(a) for all counterclaims.

### a. Bitmain's Alter Ego Claim

Bitmain has alleged sufficient facts to support its claims under an alter ego theory. "A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief and a demand for the relief sought." Fed. R. Civ. P. 8(a). A claim for veil piercing/alter ego is determined by a two-prong test: (1) total domination and control of one entity by another and (2) inequitable consequences. *Sturkie v. Sifly*, 313 S.E.2d 316, 318 (S.C. Ct. App. 1984); *Oskin v. Johnson*, 735 S.E.2d 459 (S.C. 2012).

#### i. Total Domination and Control of One Entity by Another

Bitmain properly alleges facts sufficient to support the first prong of the alter ego test. "The first part of the test, an eight-factor analysis, looks to observance of the corporate formalities by the dominant shareholders."[1] *Hunting v. Elders*, 597 S.E.2d 803, 806 (S.C. Ct. App. 2004). *Id*. "The conclusion to disregard the corporate entity must involve a number of the eight factors but

---

[1] Before discussing the eight-factor analysis, Plaintiffs argue two preliminary points: (1) that the mere fact that someone is an owner does not mean they exercise actual control over the company; and (2) that the control element for alter ego or veil piercing claims typically requires providing that an individual or entity controlled the corporation to such an extent that the company no longer functioned independently. *See* Mot. to Dismiss, p. 6. Plaintiffs provide zero citations for each section discussing these arguments. Bitmain is unclear as to why Plaintiffs discussed these unsupported arguments in addition to the eight-factor analysis, when the first prong is solely determined by the eight-factor analysis.

need not involve them all." *Id*. (citing *Cumberland Wood Prods. v. Bennett*, 417 S.E.2d 617 (Ct. App. 1992)). Nor has any case required that each factor be accorded equal weight with the others. *Hunting*, 597 S.E.2d at 806. In fact, many of these eight-factors "now have less importance." *Id*. at 807. Here, the relevant factors are whether the corporation was grossly undercapitalized, insolvency of the debtor corporation at the time, absence of corporate records and the fact that the corporation was merely a façade for the operations of the dominant stockholder. *Dumas v. InfoSafe Corp.*, 320 S.C. 188, 463 S.E.2d 641 (Ct. App. 1995).

Bitmain's Counterclaims describe how Plaintiffs used Bennettech' s corporate form as a sham to perpetuate wrongs against Bitmain. *See* Bitmain's Counterclaims, p. 16-18. For example, Bitmain alleged that Lamill and AGA have complete control over Bennettech and Bennettech has no separate interest of its own. *Id.* p. 17. Bennettech's sole purpose is to fulfill the Bennettsville contract. *Id.* p.16. In addition, Bitmain alleged that Plaintiffs, as evidenced by AGA Capital's sole members' testimony, furthered the scheme by forming Sparc Foundry LLC ("Sparc"), of which Bennettech is the sole member. Sparc was formed for the sole purpose of entering into the contract with Marlboro Electric, and Sparc's failure to satisfy its obligations to Marlboro Electric caused one of Bennettech's core breaches of the Service Framework Agreement ("SFA"). *Id*., p. 17-18. To support this allegation, Bitmain cited to Sparc's bankruptcy case, Sparc Foundry, case No. 24-02116, ("the "Bankruptcy Case"), which contains evidence that Sparc has no revenue, no employees, and no books and records, and the testimony of AGA Capital's sole members. *Id*., p. 17. Thus, Bitmain has provided sufficient facts to survive Rule 8's plausibility standard under a Rule 12(b)(6) motion to dismiss.

    **ii. Inequitable Consequences**

Additionally, Bitmain has plausibly alleged sufficient facts to support the second prong of the alter ego test. The second prong requires that there be an element of injustice or fundamental unfairness if the acts of the corporation be not regarded as the acts of the individuals." *Hunting*, 597 S.E.2d at 806, 809. "[T]he essence of the fairness test is simply that an individual businessman cannot be allowed to hide from the normal consequences of carefree entrepreneuring by doing so through a corporate shell." *Id*. at 809. This prong requires that the defendant was "aware" of the claim against the corporation. *Multimedia Pub. Of South Carolina, Inc.*, 431 S.E.2d at 554-55. "A person is 'aware' of a claim against the corporation . . . if he has notice of facts which, if pursued with due diligence, would lead to knowledge of the claim." *Id*.

Here, Plaintiffs characterize this prong as the "fraud element" but "fundamental unfairness can exist in the absence of fraud." *Id.* at 554; *see also Oskin v. Johnson*, 735 S.E.2d 459, 465 (S.C. 2012) ("[An alter ego] theory does not apply, however, in the absence of fraud, injustice, *or* contravention of public policy" (emphasis added)). It would be fundamentally unfair for Bennettech's acts to not be regarded as the acts of Plaintiffs. Plaintiffs were aware of Bitmain's claim against Bennettech, as evidenced by AGA Capital's sole members' testimony that they formed Sparc for the sole purpose of entering into the contract with Marlboro Electric, and Sparc's failure to satisfy its obligations to Marlboro Electric caused one of Plaintiffs as alter egos of Bennettech's core breaches of the SFA. *Id*., p. 17-18. As discussed above, Bitmain supported this allegation by citing to the Bankruptcy Case, which contains evidence that Sparc has no revenue, no employees, and no books and records, and the testimony of AGA Capital's sole members. *Id*., p. 17. If the Court finds that Bennettech's acts are not to be regarded as Plaintiffs' acts, Plaintiffs will have successfully evaded the millions of dollars owed to Bitmain by its corporate shielding scheme.

4881-8615-7032 v.1

Therefore, under the correct, Rule 8(a) standard for a motion to dismiss, Bitmain has plausibly alleged sufficient facts to support their claims under an alter ego theory.

### b. Bitmain's Breach of Contract, Indemnity, and Negligence Claims.

As discussed above, Plaintiffs' Motion to Dismiss does not challenge Bitmain's breach of contract, indemnity, and negligence claims. Out of an abundance of caution, however, below, Bitmain addresses how it has alleged sufficient facts to survive Plaintiffs' Motion for each of these claims as well.

### i. Breach of Contract

Bitmain's breach of contract claim relates to the August 5, 2023, SFA entered into by Bitmain and Plaintiffs as alter egos of Bennettech, and pursuant to the SFA, it is interpreted by Georgia law. The elements for a breach of contract claim in Georgia are the (1) breach and the (2) resultant damages (3) to the party who has the right to complain about the contract being broken. *See e.g., Ajigbolamu v. Milne*, 902 S.E.2d 687, 690 (Ga. Ct. App. 2024). Here, Plaintiffs as alter egos of Bennettech breached its obligations under the SFA and Service Order by, among other things, failing to supply sufficient electrical power to the Data Center Facility required by Article 6.1 of the SFA and Article 2.1 of the Service; failing to maintain an Online Status Ratio of 95% of greater as required by Article 6.9(c) of the SFA' failing to maintain the safety and security of the Hosted Servers as required by Articles 4.2 and 6.5 of the SFA; failing to pay the Theoretical Monthly Hosting Fee of $1,749,600 pursuant to Bitmain's termination of the SFA under Article 11.2(d) for Plaintiffs as alter egos of Bennettech continued breached of Article 6.9(c); failing to return Bitmain's $1,749,600 Deposit, as required by Article 11.3(a)(i); failing to return Bitmain's $831,837.60 Prepayment, as required by Article 3.5(b); and allowing 280 of Bitmain's Hosted Servers to be lost. Bitmain's Counterclaims, p. 10-16.

As a result of these breaches, Bitmain, a party to the contract who has a right to complain about such breaches, has suffered monetary damages in an amount exceeding a total of $26.25 million, which includes the Deposit, Prepayment, Theoretical Monthly Hosting Fee, 280 lost Hosted Servers, and loss profits of at least 350 bitcoin. *Id*. Thus, Bitmain has alleged sufficient facts for each element of its breach of contract claim.

      **ii. Indemnity**

Bitmain's indemnity claim is based on the indemnification provision within the SFA and interpreted by Georgia law. Indemnity agreements are interpreted under the rules governing contracts. *See Anderson v. U.S. Fidelity & Guar. Co.*, 600 S.E.2d 712 (2004). The main consideration in contract interpretation is the intent of the parties. *Megel v. Donaldson*, 654 S.E.2d 656 (2007). The intent of the parties is to be ascertained from the document itself when the terms are clear and unambiguous. *See Greenberg Farrow Architecture v. JMLS 1422, LLC*, 791 S.E.2d 635 (2016); *see also Anderson*, 600 S.E.2d 712. Here, pursuant to Article 9.1. of the SFA, Plaintiffs as alter egos of Bennettech agreed to indemnify Bitmain for its costs incurred in relation to any third-party action relating to the services Bennettech provided under the SFA. *See* Bitmain's Counterclaims, p. 15. In its Counterclaims, Bitmain alleges that Bennettech breached its obligation to allow Bitmain to remove the Hosted Servers after the termination of the SFA, Bitmain was forced to bring an action in South Carolina state court against KAMCP, the owner of the Data Center Facility, which caused Bitmain to incur attorneys' fees. *See id.*, p. 14-15. Thus, Bitmain alleged sufficient facts that Plaintiffs as alter egos of Bennettech must indemnify Bitmain for all costs associated with Bitmain having to bring action against KAMCP.

      **iii. Negligence**

In a claim for negligence, a plaintiff must show (1) the defendant owed a duty of care to the plaintiff, (2) the defendant breached the duty by a negligent act or omission, (3) the defendant's breach was an actual and proximate cause of the plaintiff's injury, and (4) the plaintiff suffered injury or damages. *See e.g., Wright v. PRG Real Estate Management, Inc.*, 826 S.E.2d 285, 290 (2019). First, Plaintiffs as alter egos of Bennettech, had an obligation to exercise due care of Bitmain's 9,000 Hosted Servers at the Data Center Facility pursuant to the Articles 4.2 and 6.5 of the SFA, which require Plaintiffs as alter egos of Bennettech to provide a safe and secure environment for the Hosted servers and ensure the safety and security of the Hosted servers against any safety accidents. *See* Bitmain's Counterclaims, p. 16. Next, Plaintiffs as alter egos of Bennettech, breached its duty of care by negligently allowing 280 of the Hosted Servers to have been lost while in Plaintiffs as alter egos of Bennettech's care. *See id*. Finally, the loss of the Hosted Servers by Plaintiffs as alter egos of Bennettech an actual and proximate cause of Bitmain's injury, approximately $30 million, which is the market value of the 9,000 lost Hosted Severs. *See id*. Thus, Bitmain alleged sufficient facts that Plaintiffs as alter egos of Bennettech were negligent.

## CONCLUSION

For the reasons discussed above, the Court should find that Bitmain has met its burden and deny Plaintiffs' Motion to Dismiss.

Signature Page to Follow

4881-8615-7032 v.1

NELSON MULLINS RILEY & SCARBOROUGH LLP

*/s/ Paul Collins*
Paul Collins
Federal Bar No. 9055
1320 Main Street, 17th Floor
Columbia, SC 29201
Tel.: (803) 255-9729
paul.collins@nelsonmullins.com
soren.young@nelsonmullins.com

*Attorney for Claimant*
*Bitmain Technologies Georgia Limited*

Dated: September 25 2024

## **CERTIFICATE OF SERVICE**

I, the undersigned, do hereby certify that on September 25, 2024, a copy of the foregoing documents have been served via the electronic filing system on all parties of record or their representatives in this action as listed below.


        */s/ Paul Collins*_____
        Paul Collins

4881-8615-7032 v.1